IN THE MATTER OF THE ESTATE OF
MARY D. HAYS, DECEASED.

Monmouth County Court
Probate Division

May 7, 1974.

*Mr. Donald D. Rankin* for the successor trustee, Colonial First National Bank (*Messrs. Saling, Moore, O'Mara & Coogan,* attorneys).

*Mr. Theodore J. Labrecque, Jr.* for Lee H. Deedmeyer, individually and as virtual representative of Diana Louise Deedmeyer and Lee H. Deedmeyer, Jr. (*Messrs. Labrecque, Parsons & Bassler,* attorneys).

*Mr. Robert D. Broege,* guardian *ad litem* of Rachael Clayton, *pro se.*

LANE, J. S. C., Temporarily Assigned. Colonial First National Bank, successor trustee of the trust under Article Fourth of the will of Mary D. Hays, has presented to the court for approval its first and final accounting covering the period of October 10, 1968 to October 2, 1973. In conjunction with the accounting it also asked for instructions concerning the interpretation of paragraph 4 of Article Fourth.

Article Fourth provides:

All the rest, residue and remainder of my estate, including both real, personal and mixed property and wherever the same may be situate, I give, devise and bequeath unto my Executor and Trustee hereinafter named, in trust, however, for the following uses and purposes:

(1) To pay the net income of my estate to or for and on behalf of my said husband, ARTHUR G. HAYS, for and during the term of his natural life, the same to be paid at least semi-annually and to be effective as to all income received by my estate from the day of my death.

(2) Upon the death of my said husband, ARTHUR G. HAYS, and provided my brother, OTTO L. DEEDMYER, shall survive him, the said income shall be paid to the said OTTO L. DEEDMEYER for and during the term of his natural life and shall likewise be paid at least semi-annually.

(3) In the event my Executors and Trustees, in their discretion, should deem it necessary or advisable to use said income or so much of the principal as may, in their determination, be required to provide for the proper care, comfort and maintenance of my said husband, ARTHUR G. HAYS, during his lifetime, my said executors and trustees are hereby authorized and empowered, without necessity

of obtaining Court approval therefore, to use said income or any portion thereof and if said income should be insufficient, to use the principal of said trust or any portion thereof for such purpose during my said husband's lifetime.

(4) In the event my brother, OTTO L. DEEDMEYER, should predecease my husband, ARTHUR G. HAYS, leaving lawful issue him surviving, then I direct that upon the death of my husband, ARTHUR G. HAYS, the trust herein provided for shall end and terminate and the corpus of said trust together with any accumulation of income therein not yet remitted to or on behalf of my said husband, ARTHUR G. HAYS, shall then go to and I hereby give and bequeath the same in equal shares, share and share alike, to the issue of the said OTTO L. DEEDMEYER and their heirs, provided however, and it is my intention in such event, that if there are grandchildren of the said OTTO L. DEEDMEYER alone or together with children of the said OTTO L. DEEDMEYER who would then be entitled to share, that they shall all share equally in equal shares, per stirpes and not per capita. In the event that my said brother, OTTO L. DEEDMEYER, should predecease my said husband, ARTHUR G. HAYS, without leaving lawful issue him surviving, or without grandchildren him surviving, then said trust shall also end and terminate and the corpus thereof together with any accumulation of income therein not yet remitted to or on behalf of my said husband, ARTHUR G. HAYS, shall then go to and I hereby give and bequeath the same unto my said husband, ARTHUR G. HAYS, his heirs and assigns forever.

Mary D. Hays and Arthur G. Hays were married in 1912. Mary Hays' Will is dated January 15, 1959. She died July 16, 1966. Her husband died May 25, 1967. Her brother, Otto Deedmeyer, died October 2, 1973.

Mr. and Mrs. Hays had no children surviving. At the time of the execution of her will her brother Otto L. Deedmeyer, her nephew Lee H. Deedmeyer and his two children Diana Louise Deedmeyer and Lee H. Deedmeyer, Jr., were, with the exception of her husband, her next of kin. Mr. Hays' family other than his wife consisted of a nephew and two nieces, one of whom was married and had three children.

Mr. and Mrs. Hays each had substantial assets in his or her own right. On November 14, 1963, Arthur G. Hays created an *inter vivos* trust, reserving the income to himself for life, and upon his death to his wife, Mary D. Hays. In the event that Mary D. Hays should predecease Arthur G.

Hays, then the income was to be paid over equally to his two nieces and nephew, until the death of the last survivor of them, at which point the principal was to be divided among their issue. The will of said Arthur G. Hays had substantially similar provisions, except that it eliminated the income for life for Mary D. Hays, since it was executed on August 17, 1966, after the death of said Mary D. Hays.

The original inventory of that trust was valued at over $399,000, and at the date of death of Arthur G. Hays on May 25, 1967 the inventory value was over $415,000 and the market value almost $444,000. The inventory value of the estate of Arthur G. Hays, exclusive of the above-mentioned trust, was over $280,000. The value of the assets of the estate of Mary D. Hays amounted to over $235,000 on the date of her death.

Arthur G. Hays was born in 1881 and Otto Deedmeyer was born in 1888.

Need for construction of Article Fourth arises from the fact that it contains no gift-over of the residue on the contingency which occurred, namely, Otto L. Deedmeyer surviving Arthur G. Hays. The guardian *ad litem* for an infant next of kin of Arthur G. Hays argues that an intestacy occurred so that the residue should be distributed to them through Arthur G. Hays' estate. The Deedmeyer son and grandchildren argue that Mary D. Hays' probable intent requires her will to be construed to incude a gift-over to them.

There has been introduced into evidence an affidavit of the scrivener of the will. He has no specific recollection of any conferences with Mr. or Mrs. Hays in connection with the preparation of the will. He had known the Hayses from the early 1930s. He states that both Mr. Hays and Mrs. Hays treated their estates separately. His explanation of the failure to provide for the disposition of the residue in the contingency which occurred is commendably candid. "[M]y only explanation for that fact is that apparently both Arthur G. Hays, Mary D. Hays and I overlooked this contingency."

In construing a will the function of the court is to ascertain and give effect to the intent of the testator. Primary emphasis is to be given to the dominant plan and purpose as they appear from the language of the entire will as illuminated by the surrounding facts and circumstances existing at the date of the execution. It is the "probable" intent of the testator which the court must ascertain. *Wilson v. Flowers,* 58 *N. J.* 250, 260 (1971); *In re Conway,* 50 *N. J.* 525, 527 (1967); *In re Cook,* 44 *N. J.* 1, 6 (1965); *Fidelity Union Trust Co. v. Robert,* 36 *N. J.* 561, 564 (1962). So far as the situation permits, courts will ascribe to the testator those impulses which are common to human nature and will construe his testament so as to effectuate those impulses. *In re Cook, supra,* 44 *N. J.* at 6; *Fidelity Union Trust Co. v. Robert, supra,* 36 *N. J.* at 565. The testator's probable intent is not to be thwarted by a literal meaning of his words. *Wilson v. Flowers, supra,* 58 *N. J.* at 260; *Fidelity Union Trust Co. v. Robert, supra,* 36 *N. J.* at 565; *Bank of New York v. Black,* 26 *N. J.* 276, 284 (1958); *Bottomley v. Bottomley,* 134 *N. J. Eq.* 279, 291 (Ch. 1944). Not only are circumstances surrounding the execution of the will admissible, but also circumstances from then until the testator's death are admissible. *In re Cook, supra,* 44 *N. J.* at 6. Courts have not only substituted words but have readily inserted omitted words when needed to effectuate the manifest intent of a testator. *In re Cook, supra,* 44 *N. J.* at 8; *Bottomley v. Bottomley, supra,* 134 *N. J. Eq.* at 291. See *Holcomb v. Lake,* 25 *N. J. L.* 605, 608–609 (E. & A. 1855); *Den ex dem. Brown v. Mugway,* 15 *N. J. L.* 330, 331–332 (Sup. Ct. 1836); *Zabriskie v. Huyler,* 62 *N. J. Eq.* 697, 700 (Ch. 1901), aff'd o. b. 64 *N. J. Eq.* 794 (E. & A. 1902). The inquiry is always peculiar to the individual circumstances. Neither precedents involving the construction of other wills nor canons of construction have great force in determining the testator's probable intent. *In re Morton,* 48 *N. J.* 42, 47 (1966); *Fidelity Union Trust Co. v. Robert, supra,* 36 *N. J.* at 568.

Prior to *In re Cook, supra,* 44 *N. J.* 1, it was said that the actual intent of the testator, independent of the words used, was not the issue, but rather what was the reasonable meaning of the words actually written. *In re Armour,* 11 *N. J.* 257, 271 (1953); *In re Thompson,* 90 *N. J. Super.* 350, 353 (App. Div. 1966); *In re Hoffman,* 53 *N. J. Super.* 396, 400 (App. Div. 1959); *Weiss v. Rheinstein,* 50 *N. J. Super.* 308, 316 (App. Div. 1958). However, *Wilson v. Flowers, supra,* 58 *N. J.* at 262, would appear to have changed this general rule. The Supreme Court there appears to have directed courts in the case of an ambiguity to find as near as possible the actual intent of the testator. However, the rule remains that if no ambiguities exist, the terms of the will may not be varied. This rule would seem to have little, if any, force since apparently any evidence is admissible to show an ambiguity.

The cases involving failure to dispose of residue under a specific contingency although other contingencies are covered are quite difficult to reconcile. The guardian *ad litem* relies upon *Montclair Trust Co. v. Lupher,* 44 *N. J. Super.* 408 (App. Div. 1957). In that case the will provided for a gift-over in the event that both husband and wife shall die or meet death as a result of a common disaster. In fact, the testator survived his wife. The Appellate Division refused to find a gift-over by implication and allowed the residue to pass by intestacy.

Recently that case was followed in *In re Schuhmann,* 125 *N. J. Super.* 56 (App. Div. 1973) certif. den. 63 *N. J.* 569 (1973). There the court stated:

> We agree with the court below, and here adjudge, that an intestacy exists. We announce this determination with an awareness of, and respect for, the sound rule which presumes that one who would make a will would not intend an intestacy. But as we said in *In re Schmidt,* 46 *N. J. Super.* 369, 381 (App. Div. 1957), "It is not our function to make a will for the testator, but to construe the one he made." In *Montclair Trust Company v. Lupher,* 44 *N. J. Super.* 408 (App. Div. 1957), we did not hesitate to declare an intestacy in a situation almost precisely like the one before us now except that two (reciprocal) wills were involved. There the testator (who was

a lawyer), like Wilhelmina here, simply did not think of the contingency which later occurred. In *Glover v. Reynolds*, 135 *N. J. Eq.* 113 (Ch. 1944), aff'd o. b. 136 *N. J. Eq.* 116 (E. & A. 1945), the same testamentary situation existed and the same arguments were made. The court held the will "inoperative to pass any of the testatrix' estate." *Darpino v. D'Arpino*, 73 *N. J. Super.* 262 (App. Div. 1962), is distinguishable. There was no express nullification in the will of the dispositive clause in the event the deaths did not result from a common disaster. There was no practical interpretation by the testator comparable to Wilhelmina's note of April 19, 1971, here. [at 65–66]

On the other hand, in *City Bank Farmers Trust Co. v. Hentz,* 107 *N. J. Eq.* 283 (Ch. 1930), Vice-Chancellor Buchanan construed the decedent's will by relying upon the doctrine of gift by implication. Although it was not necessary for him to interpolate a clause into the will to accomplish the result reached, he stated:

In the classical instance of gift by implication, where testator says "after the death of A, I give my estate in fee to B" (B being the heir), there is no clause or provision which can be construed into a provision expressing the gift of a life estate to A or to anyone else. The interpretation of a gift of a life estate to A is in effect an interpolation of a clause expressing such a gift.

Courts in interpreting ambiguous or imperfect testamentary dispositions constantly interpolate (or strike out) one or more words. There is no difference in principle between the interpolation of a few words and the interpolation of an entire clause, if the requisite justification therefor exists. [at 294]

In *Russell v. Russell,* 16 *N. J. Super.* 589 (App. Div. 1951), the Appellate Division in an opinion by Judge (now Mr. Justice) Brennan applied the rule of a gift by implication. He stated:

We find here such a strong probability that the testator intended the disposition made in the event of the possible contingency actually provided for in the will to apply also in the probable contingency which actually occurred, but which was not specifically provided for in the will, that we conclude a contrary intention cannot be supposed.

Our conclusion does not make a new will for Mr. Russell. It is merely giving effect to testamentary intention limited to language within the four corners of the will. It is a sustaining of a bequest by

implication in exact accord with the expressed bequest in the will, thus giving effect to the expressed general testamentary plan and purpose of the testator. [at 595]

In his concurring opinion in *In re Klein's Estate,* 36 *N. J. Super.* 407 (App. Div. 1955), Judge Clapp started us down the road that we are presently on of probable intent. He stated:

> The critical question in this case, as above stated, is what should be the standard of proof here. I think Lord Eldon's rule and the rule calling for clarity are too strongly stated. In my view the criterion should be simply probability; a provision should be implied if we are of the opinion that in all probability the testator actually intended that very provision. Such a standard produces a far more just result, than if we were to refuse to make any implication at all. We extend our efforts, as we ought, toward effectuating the testator's intentions. But — and this is the heart of the matter — the result reached does not, I think, do any violence to the overriding policies of the Statute of Wills which require the testator's intentions to be integrated into the paper propounded. For we derive a probability as to his designs from the very words on that paper.
>
> The English cases seem to be opposed to these views. But it will be found upon an examination of the facts presented by cases in this country that a substantial number of authorities accept the more liberal position advanced here. 2 *Powell, Real Property* 710–713 (1950), and cumulative supplement. See the New York cases referred to in *Russell v. Russell,* 16 *N. J. Super.* 589, 595 (App. Div. 1951). [at 419–420]

There followed *Fidelity Union Trust Co. v. Robert, supra,* 36 *N. J.* 561, a leading case in will construction matters.

*Darpino v. D'Arpino,* 73 *N. J. Super.* 262 (App. Div. 1962), involved a will which provided for an alternative disposition of the residual estate in favor of the testator's four children in the event that testator and his wife should die in a common disaster. That event did not take place. There was no express provision for a similar or other disposition if his wife should predecease the testator, which she did. The court construed the will to provide a gift-over to those who were named to take in the contingency clause.

A definitive statement of the rule was given in *In re Burke,* 48 *N. J.* 50 (1966). The court stated:

The current view of probable intent to which this court is now committed was crystallized in Justice Jacobs' opinion in *Fidelity Union Trust Co. v. Robert, supra* (36 *N. J.* 561), following the ground-breaking decisions in *In re Klein's Estate,* 36 *N. J. Super.* 407, 415 (concurring opinion of Judge Clapp) (App. Div. 1955) and *Bank of New York v. Black,* 26 *N. J.* 276 (1958). The essence of this broader and more liberal approach to will construction, is found in certain key expressions in *Robert.* "* * * 'when we say we are determining the testator's intent, we mean his probable intent.' " "* * * [I]n ascertaining the subjective intent of the testator, courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances * * *. So far as the situation fairly permits, courts will ascribe to the testator, 'those impulses which are common to human nature, and will construe the will so as to effectuate those impulses.' " "* * * [T]he court's endeavor is to put itself in the testator's position insofar as possible in the effort to accomplish what he would have done had he 'envisioned the present inquiry.' " (36 *N. J.,* at pp. 564–566). "Since the goal is the ascertainment of the testator's probable intent in this particular will construction case, precedents involving the construction of other wills have no great force * * *. Similarly, canons of construction which are largely designed to serve as aids in ascertaining the testator's probable intent have no controlling force." (36 *N. J.,* at p. 568). As was very recently said in *In re Estate of Morton,* 48 *N. J.* 42 (1966) ; "The inquiry is always peculiar to the individual circumstances." See also 5 *Clapp, op. cit. supra,* § 196 (1965 supp.), 416. Among cases since *Robert* applying this approach may be noted *In re Cook's Estate,* 44 *N. J.* 1 (1965), and *Darpino v. D'Arpino,* 73 *N. J. Super.* 262 (App. Div. 1962). See also *In re Coes Estate,* 42 *N. J.* 485 (1964). While a court may not, of course, conjure up an interpretation or derive a missing testamentary provision out of the whole cloth, it may, on the basis of the entire will, competent extrinsic evidence and common human impulses strive reasonably to ascertain and carry out what the testator probably intended should be the disposition if the present situation developed.

This positive approach has particular significance in the case, as here, of an unprovided for contingency causing a failure in the complete disposition of the residue. Formerly the judicial viewpoint was quite negative. When the problem arose in *Lawes v. Lynch, supra* [6 *N. J.* 1 (1950)], the court looked at it this way in arriving at a conclusion of partial intestacy :

"Since the testator is presumed to know the law, it must be presumed that he knew how to provide for the right of survivorship as

well as how to provide for substitution. If the testator had intended survivorship as an attribute of the estate given he could have expressly so provided. Manifestly he did not do so." (6 *N. J.*, at p. 9.)

To be contrasted is the opposite result reached in analogous situations in *Robert* and *Cook* where judicially ascertained probable intention carried the day. In such situations, of paramount importance is the great strength of the so-called presumption against intestacy, cogently expressed in the *Robert* opinion by a quotation from a New York case: " 'A testator, by the act of the making of a will, casts grave doubt on any assumption that he expressly intends to chance dying intestate as to any portion of his property * * *. "The idea of anyone deliberately purposing to die testate as to a portion of his estate and intestate as to another portion is so unusual in the history of testamentary disposition as to justify almost any construction to escape it." ' " (36 *N. J.*, at p. 572) [at 63–65]

See also *In re Poschl,* 94 *N. J. Super.* 482 (Cty. Ct.), aff'd o. b. 49 *N. J.* 82 (1967).

This court has difficulty justifying the Appellate Division's language in *In re Schuhmann, supra,* 125 *N. J. Super.* at 64. That court relied upon an Appellate Division decision which preceded *Fidelity Union Trust Co. v. Robert, supra,* 36 *N. J.* 561. *In re Burke, supra,* 48 *N. J.* 50, and *In re Poschl, supra,* 49 *N. J.* 82 require a more sympathetic approach to the probable intent of the testator. In any event, *In re Schuhmann, supra,* is factually distinguishable.

■ An examination of the background of the testatrix and the other provisions of her Will make it perfectly clear that she intended to benefit her husband and her brother with life estates and then her brother's child and grandchildren with the remainder. There is no way that one can find any intention to benefit her husband's next of kin except in the contingency of Otto Deedmeyer dying without issue surviving. Her probable intent is clear. That intent requires a filling of the gap by the court finding a gift-over to her brother's child and grandchildren in the same form provided for the contingency of Otto Deedmeyer predeceasing Arthur G. Hays leaving lawful issue.

The successor trustee is, therefore, instructed that Lee H. Deedmeyer, Diana Louise Deedmeyer and Lee H. Deedmeyer, Jr. take the residue of the trust. That residue will include the income accumulated to the date of Otto L. Deedmeyer's death.